IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHAD BARRENTINE and<br>ALLEN BARRENTINE,<br><br>　　　Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*et al.*,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CASE NO.  1:21-cv-00158-RAH<br>　　　　　　　　　[WO] |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Allen and Chad Barrentine appeal from final agency decisions concerning their watermelon crop claims under the Noninsured Crop Disaster Assistance Program (NAP), a crop disaster program administered by the Farm Service Agency of the United States Department of Agriculture.[1] The issues have been fully briefed, and each party has moved for summary judgment. For the reasons below, the Barrentines' motion is due to be denied, the Agency's motion is due to be granted, and the final agency decision is due to be affirmed for the reasons stated herein.

---

[1] The Barrentines have named as defendants the United States of America, the Farm Service Agency, and the United States Department of Agriculture. For purposes of this Opinion, the Court will refer to them collectively as the Agency.

## I. BACKGROUND

### A. Overview of NAP

NAP provides financial assistance to farmers of non-insurable crops to protect against natural disasters that prevent crop planting or result in lower yields or crop losses. NAP is administered under the general supervision of the Farm Service Agency (FSA) and is carried out by FSA state and county committees. 7 C.F.R. § 1437.2(a).

NAP program participants are required to notify the FSA within 72 hours after a crop loss occurs or first becomes apparent[2] to the participant, the purpose of which is to allow the FSA an opportunity to quickly inspect the deteriorating crop in the field and to make an appraisal. *See id.* § 1437.11(a). The participant must certify this date in his Notice of Loss along with other details regarding the crop loss. *Id.* § 1437.11(c)(2). The local FSA committee reviews this Notice of Loss and any supporting documentation to determine whether the participant qualifies for NAP benefits. *See generally id.* § 1437.11.

FSA regulations employ a Finality Rule. Under the Finality Rule, a determination by an FSA state or county committee becomes final and binding 90 days after a participant files an application for benefits and the required supporting documentation. *Id.* § 718.306(a). If the FSA state or county committee erroneously

---

[2] This date will also be referred to as "the loss date."

2

approves a claim for benefits, the Finality Rule bars the Agency from recovering that payment after 90 days unless an exception to the Finality Rule applies, such as if "[t]he determination was in any way based on erroneous, innocent, or purposeful misrepresentation; false statement; fraud; or willful misconduct by or on behalf of the participant." *Id.* § 718.306(a)(2), (b)(1).

### B. The Barrentines' 2016 NAP Claims

Allen and Chad Barrentine are father and son and operate a farming business as a self-proclaimed partnership. (*See* Doc. 23-20 at 56.) In February 2016, Allen and Chad purchased NAP coverage for non-irrigated watermelons in each of their individual names. (Doc. 22-4 at 44–48; Doc. 23-4 at 36–38.) After planting their watermelon crops in the first part of April 2016, the Barrentines filed crop acreage reports stating that each of them held a 100% producer share in their respective watermelon crop. (Doc. 22-5 at 6; Doc. 23-4 at 46.)

The Barrentines began harvesting their watermelon crops sometime around June 24, 2016. (Doc. 23-20 at 61.) By June 28, 2016, the Barrentines believed their watermelon crops were going to be largely unsuccessful based on the weather conditions and the size, condition, and lack of marketability of their crops. (*Id.* at 32, 35–36, 61.) That same day, Allen notified the Houston County FSA office regarding his and Chad's crop losses. (*Id.* at 32, 35, 42, 61, 72–73; Doc. 23-22 at 39.) The FSA representative told Allen that she would prepare the paperwork and

would call him once it was ready. (Doc. 23-20 at 35.)

On July 8, 2016, the Barrentines visited the FSA county office to sign the Notices of Loss prepared by the FSA representative. (Doc. 22-5 at 3–4; Doc. 23-4 at 40–41.) Both Notices of Loss listed July 8, 2016 as the date their crop losses were first apparent and identified drought and heat beginning on June 28, 2016 as the cause of loss. (Doc. 22-5 at 3–4; Doc. 23-4 at 40–41.) Both Allen and Chad certified that their notices contained accurate information. (Doc. 22-5 at 3–4; Doc. 23-4 at 40–41.)

On July 20, 2016, a loss adjuster visited the Barrentines' watermelon fields, observed that there were no marketable watermelons, and concluded there had been a crop loss due to lack of rain and excessive heat. (Doc. 22-5 at 8; Doc. 23-5 at 16.) On September 15, 2016, the Houston County FSA Committee sent Allen and Chad letters informing them that their claims for NAP benefits were approved based on the information provided in their Notices of Loss, in addition to the loss adjuster's inspections and the committee's own personal knowledge. (Doc. 22-5 at 19; Doc. 23-5 at 29.)

**C. FSA Reversal**

Three years later, on October 9, 2019, the FSA sent letters to Allen and Chad notifying them that it was reversing the approval of their 2016 NAP claims. (Doc. 22-1 at 5–7; Doc. 23-1 at 5–7.) In these letters, the FSA deputy administrator stated

4

that the Barrentines had misrepresented the cause of their crop losses as well as the date their crop losses first became apparent. Specifically, the deputy administrator determined the weather data did not support the Barrentines' claims that drought and heat adversely impacted their watermelon crops. (Doc. 22-1 at 6; Doc. 23-1 at 6.) The deputy administrator also found that production records submitted by the Barrentines indicated that their crop losses first became apparent prior to July 8, 2016, contrary to the date certified in their Notices of Loss. (Doc. 22-1 at 6; Doc. 23-1 at 6.) Finally, the deputy administrator concluded that Chad had misrepresented his status as an eligible producer because all the input receipts submitted were billed to Allen. (Doc. 22-1 at 6.)

Based on these misrepresentations, the deputy administrator determined neither Allen nor Chad were eligible for a 2016 NAP payment. (Doc. 22-1 at 7; Doc. 23-1 at 6–7.) Furthermore, the deputy administrator concluded that because the Barrentines had misrepresented facts concerning their NAP eligibility, the Finality Rule did not apply and the Agency could recoup the NAP payments received by the Barrentines. (Doc. 22-1 at 6; Doc. 23-1 at 7.)

**D. NAD Administrative Judge's Decision**

The Barrentines appealed the Agency's October 19, 2019 decisions to the National Appeals Division (NAD), and independent office within the USDA that

5

conducts administrative appeals hearings of adverse program decisions.[3] The Barrentines argued that the Agency's decisions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. (Doc. 22-1 at 13–15; Doc. 23-1 at 14–16.) The Barrentines consolidated their appeals, and an administrative judge conducted an evidentiary hearing. (Doc. 22-1 at 58; Doc. 23-1 at 59.)

Both Allen and Chad testified during the evidentiary hearing. Allen testified that he first realized he suffered a loss on his watermelon crop on June 28, 2016 when he called the FSA office and spoke with an Agency representative. (Doc. 25-1 at 507–08.) Allen also testified that he did not observe that his Notice of Loss incorrectly identified his loss date as July 8 because he was in a rush and trusted the FSA representative when she gave him the form to sign. (*Id.* at 509.) Allen additionally stated that if he had read the form, he "would have said that's not right . . . [because] [his] loss was . . . first notice[d] [on] June the 28th." (*Id.* at 510.) Chad likewise testified that neither he nor Allen read their notices prior to signing them because they felt rushed by the FSA representative. (Doc. 23-22 at 39–40.)

The administrative judge concluded that the Barrentines failed to meet their

---

[3] The NAD is responsible for adjudicating specified administrative appeals from adverse decisions by certain agencies within the USDA, including the Commodity Credit Corporation, the Farm Service Agency, and the FSA state, county, and area committees, including appeals from the "[d]enial of participation in, or receipt of benefits under, any program of an agency[.]" *See* 7 U.S.C. §§ 6991–7002; 7 C.F.R. §§ 11.1, 11.3.

burden of showing that the Agency's reversal of the local committee's claim approval was erroneous. (Doc. 22-2 at 14; Doc. 23-2 at 13.) In particular, the administrative judge concluded that the Barrentines had misrepresented in their Notices of Loss the cause of their loss—that is, that there had been a drought—and that they had misrepresented the date their crop losses first became apparent. (Doc. 22-2 at 9–11; Doc. 23-2 at 8–10.) The administrative judge also concluded that the Agency did not err in determining that Chad was not an eligible producer because he had failed to present sufficient evidence establishing that he shared in the risk of producing the watermelon crop that was enrolled in NAP under his name. (Doc. 22-2 at 8–9.)

As to the loss date issue, the administrative judge specifically noted that the Barrentines admitted in their hearing testimony that the loss date identified in their Notices of Loss was incorrect and should have been identified as June 28, 2016, not July 8, 2016. (Doc. 22-2 at 11; Doc. 23-2 at 10.) Because the Barrentines nonetheless certified their Notices of Loss with this incorrect information, the administrative judge concluded the Agency did not err in finding that the Barrentines had made a misrepresentation about their loss date. (Doc. 22-2 at 11; Doc. 23-2 at 10.) Based on these misrepresentations, the administrative judge also concluded that an exception to the Finality Rule allowed the Agency to recoup the Barrentines' 2016 NAP payments. (Doc. 22-2 at 12; Doc. 23-2 at 10–11.)

7

### E. NAD Director Review

The Barrentines appealed to the NAD Director, arguing they did not make any misrepresentations with respect to their cause of loss, the date their losses first became apparent, or Chad's status as an eligible producer. (Doc. 22-2 at 21–24; Doc. 23-2 at 20–23.) They also asked for equitable relief. (Doc. 22-2 at 24; Doc. 23-2 at 23.)

After reviewing the administrative judge's determination and the agency record, the Director upheld the administrative judge's decision and denied the Barrentines' request for equitable relief. (Doc. 22-4 at 24; Doc. 23-4 at 18.) Specifically, the Director found that the administrative judge's determination was supported by substantial evidence. (Doc. 22-4 at 18–20; Doc. 23-4 at 13–14.) The Director also agreed with the administrative judge that the Finality Rule did not bar the Agency from recouping the Barrentines' NAP payments. (Doc. 22-4 at 20–21; Doc. 23-4 at 15.)

Finally, the Director also denied the Barrentines' request for equitable relief, reasoning that their failure to ensure that their Notices of Loss were correct did not show a good faith effort by them to comply with program requirements, nor did their ineligibility for NAP stem from detrimental reliance on the erroneous actions or advice of an agency official. (Doc. 22-4 at 23–24; Doc. 23-4 at 17–18.)

The Director's decision constituted the Agency's final decision under

7 U.S.C. § 6999.

## II.  STANDARD OF REVIEW

Summary judgment "is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." *Mahon v. U.S. Dep't of Agric.,* 485 F.3d 1247, 1253 (11th Cir. 2007). "However, 'even in the context of summary judgment, an agency action is entitled to great deference.'" *Id*. (citation omitted).

Judicial review of a final agency determination is governed by the Administrative Procedure Act, which provides in part that a court shall set aside an agency's "action, finding or conclusion" for being "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Id*. (citing 5 U.S.C. § 706(2)); *see also* 7 U.S.C. § 6999; *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003).

"To determine whether an agency decision was arbitrary and capricious, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (citation omitted). The arbitrary and capricious standard is exceedingly deferential, *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "[t]he reviewing court

9

is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the" decision, *Skinner*, 903 F.2d at 1539. "Rather, the 'task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court.'" *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corp of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (alterations in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)).

## III.  DISCUSSION

The parties have filed opposing summary judgment motions disputing whether the Director's decision was erroneous. The Barrentines argue the Director's decision is arbitrary, capricious, and unsupported by the evidence. The Agency, on the other hand, argues the Director did not err and his decision concerning the Barrentines' misrepresentations is supported by the evidence, especially considering the Barrentines' admission that the loss date in their notices was wrong.

Whether the Barrentines did or did not make a misrepresentation is the gateway issue as to whether the Finality Rule applies. The Finality Rule bars the Agency from recouping the Barrentines' 2016 NAP payments unless an exception to the rule applies, such as whether the FSA county committee's approval of their claims "was in any way based on erroneous, *innocent, or purposeful misrepresentation*; false statement; fraud; or willful misconduct by or on behalf of

the participant." 7 C.F.R. § 718.306(a)(2) (emphasis added). In other words, if the Barrentines received NAP payments on an otherwise ineligible loss, but they made no misrepresentations regarding their crop loss, then the Finality Rule applies and bars the Agency from recouping them three years later. But if the Barrentines did make a misrepresentation, even an innocent one, the Finality Rule does not apply, and the Agency can recoup their 2016 NAP payments.

While the Barrentines challenge the Director's conclusion that they made multiple misrepresentations, the Court will limit its discussion to the loss date issue as it is dispositive of the outcome of this appeal for both Chad and Allen. *See id.* (indicating that a single misrepresentation is sufficient for an exception to the Finality Rule to apply). Thus, the Court's primary focus is whether the Director's conclusion on the loss date issue was "arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Mahon*, 485 F.3d at 1253 (citing 5 U.S.C. § 706(2)).

On director review, the Director was required to determine whether the administrative judge's decision was supported by substantial evidence. 7 C.F.R. § 11.9(d)(1). The substantial evidence standard is not a high threshold to satisfy: "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct.

11

1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Since the substantial evidence standard is "highly deferential" to the administrative judge's factual findings, the Director "must affirm the [administrative judge's] decision unless there is no reasonable basis for that decision"—that is, the Director must conclude the administrative judge's decision was unreasonable based on the record. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc).

In upholding the administrative judge's decision, the Director focused on the fact that both Allen and Chad had admitted in their hearing testimony that their crop losses first became apparent on June 28, 2016, rather than July 8 as they certified in their Notices of Loss. The Barrentines blame the FSA representative who prepared their notices for inputting the wrong date, yet Allen and Chad also admitted that they failed to read their notices to ensure their accuracy. And although the Barrentines argue they had no intention to misrepresent their loss dates and that they merely relied on the FSA representative who prepared their notices, any misrepresentation—"erroneous, innocent, or purposeful"—triggers an exception to the Finality Rule. *See* 7 C.F.R. § 718.306(a)(2). Given these admissions and the other evidence showing that their loss was first apparent prior to July 8, the Director's conclusion that the Barrentines misrepresented their loss date and that the Finality Rule was inapplicable is well supported and certainly was not arbitrary, capricious, an abuse of discretion, or otherwise violative of the law.

Finally, the Barrentines argue the Director acted arbitrarily and capriciously in failing to grant them equitable relief, a discretionary power afforded the Director. The Agency argues the Director did not err in denying the Barrentines equitable relief because the Barrentines did not act in good faith when they failed to read their Notices of Loss and because their ineligibility did not stem directly from mistakes by Agency representatives.

The Barrentines are correct that the Director is given by statute the discretionary authority to grant equitable relief when, in acting in good faith, the Barrentines relied upon the actions or advice of the Agency or when they made a good faith effort to comply with NAP program rules. 7 U.S.C. § 7996(b); *see also* 7 C.F.R. § 718.303. Based on the record, the Director acted well within his discretion in denying equitable relief because both Allen and Chad admitted they failed to read their Notices of Loss to ensure the listed information was correct before signing. Although the Barrentines argue that they should not be penalized for the mistake of the FSA representative who inputted the wrong date, the Barrentines had an obligation and responsibility to read their submissions before signing them. *See, e.g.*, *Klingenfus v. U.S. Dep't of Agric.*, 2001 WL 1772025, at *2 (W.D. Ky. Aug. 1, 2001) (noting that it was the farmer's responsibility, not the county office employee, to prepare, file, and sign the documents which ultimately benefit the farmer, and therefore the Director's decision to deny equitable relief was not arbitrary,

13

capricious, or clearly erroneous). The Director concluded their failure to read their notices did not constitute a good faith effort. This Court cannot say that this finding was wrong or in error.

The Court sympathizes with the Barrentines on what appears to be a hyper-technical issue as it concerns the loss date. But this Court does not sit as a factfinder who must resolve disputed issues of fact, nor is it for this Court to quarrel with the judgment of the Agency or the Director. Nor can this Court re-weigh the equities even if it would have exercised its discretion differently. The Director's decision was supported by the record and therefore is due to be affirmed.

## IV. CONCLUSION

For the preceding reasons, it is **ORDERED** as follows:

1. Petitioners' *Motion for Summary Judgment* (Doc. 34) is **DENIED**;

2. Defendants' *Motion for Summary Judgment* (Doc. 37) is **GRANTED**;

3. The appeals determination of the Director of the National Appeals Division is **AFFIRMED** for the reasons stated herein; and

4. The Clerk of Court is directed to enter judgment in favor of Defendants, United States of America, the Farm Service Agency, and the United States Department of Agriculture, and close this file.

**DONE**, on this the 24th day of February 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE